UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

UNITED STATES OF AMERICA,              )
                                       )
                Plaintiff,             )
                                       )
                                       )     1:00-cv-335-JDT-WTL
                                       )     1:01-cv-0030-JDT-WTL
        vs.                            )
                                       )     IP 02-CR-112-01-T/F
                                       )
                                       )
PEGGY A. BISIG and                     )
HOME PHARM-ASSIST, INC.,               )
                                       )
                Defendants.            )

**ENTRY ON MOTIONS & NOTICE OF BRIEFING SCHEDULE**[1]

Currently before the court are several related motions pending in three related

actions.  The Defendants in these cases orchestrated a health care fraud wherein they

were able to overcharge government healthcare programs nearly two million dollars

over several years.  As a result, Health Care Fraud Detection Systems, Inc ("FDSI")

brought a *qui tam* action (Cause No. 1:00-cv-335-JDT-WTL) against Home Pharm-

Assist, Inc. ("Home Pharm").  Subsequently, the United States brought an injunctive

action (Cause No. 1:01-cv-0030-JDT-WTL) to freeze and protect the Defendants'

assets, and a criminal action (Cause No. IP 02-CR-112-01-T/F) against Ms. Bisig.  The

current dispute centers on the proper distribution of the Defendants' assets among

---

[1] This Entry is a matter of public record and will be made available on the court's
web site.  However, the discussion contained herein is not sufficiently novel to justify
commercial publication.

FDSI, the State of Indiana, and the United States.  FDSI has filed motions to intervene and stay the disbursement of the Defendants' assets (IP 02-CR-112-01-T/F, Docket No. 76; 1:01-cv-030-JDT-WTL, Docket No. 65; 1:00-cv-335-JDT-WTL, Docket No. 46), and notices of claim and petition for adjudication of interest in forfeited property (IP 02-CR-112-01-T/F, Docket No. 89; 1:01-cv-030-JDT-WTL, Docket No. 55).  After carefully reviewing the parties' briefs and supporting materials, the court finds as follows:

## I.      BACKGROUND

Home Pharm was a Kentucky corporation registered with Indiana Medicaid as a pharmacy provider, supplying Indiana Medicaid recipients with in-home pharmaceuticals products.  Peggy and Philip Bisig owned and operated Home Pharm.  From 1996 to 2000, Home Pharm engaged in a number of fraudulent practices victimizing the Indiana Medicaid Program, among others.

The Relator in this matter, FDSI, is a private company engaged in the detection and prosecution of fraudulent billing practices and other types of Medicaid fraud.  The State of Indiana has retained FDSI as a Special Consultant to the Indiana Attorney General and has given FDSI access to Indiana's Medicaid billing database.  After investigating Home Pharm, FDSI filed a *qui tam* action on February 25, 2000, pursuant to the civil False Claims Act, 31 U.S.C. §§ 3729-3733.

Subsequent to FDSI's *qui tam* filing, the United States soon joined FDSI's investigation of Home Pharm and Ms. Bisig.  The United States' investigation resulted in the United States filing an action on January 10, 2001, under the Fraud Injunction

-2-

Statute, 18 U.S.C. § 1345, to enjoin the ongoing criminal fraud and to freeze the assets of Home Pharm and Peggy and Philip Bisig. Thereafter on August 14, 2002, an indictment was returned against Ms. Bisig and Home Pharm. On March 5, 2003, a superseding indictment was filed in the criminal prosecution charging Ms. Bisig and/or Home Pharm with four counts of Health Care Fraud in violation of 18 U.S.C. § 1347, one count of Unlawful Payment of Kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), and one count of mail fraud in violation of 18 U.S.C. § 1341. The superseding indictment also asserted a criminal forfeiture allegation that certain property of Ms. Bisig and Home Pharm was subject to forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7).

On September 4, 2003, the parties filed, and the court accepted, a petition to enter a plea of guilty and a plea agreement between Ms. Bisig and the United States. On September 8, 2003, the court granted the United States' motion for a preliminary order of forfeiture. Ms. Bisig was sentenced on December 19, 2003. As part of her plea agreement, Ms. Bisig agreed to forfeit various pieces of real and personal property that were acquired by her personally during her fraud scheme, as well as the assets of Home Pharm. The United States seized about $265,000 from the injunctive action and recovered about $916,000 in property forfeited in the criminal action.

On November 14, 2003, FDSI filed its Motion to Intervene and to Stay Disbursement of Defendants' Assets in the criminal action and the injunctive action. On December 23, 2003, FDSI filed its Notice of Claim and Petition for Adjudication of Interest in Forfeited Property in the criminal action and the *qui tam* action. On June 9,

-3-

2004, FDSI filed a renewed motion to intervene.  The parties have fully briefed these motions and they are ripe for review.

## II.    FDSI'S INTEREST IN FORFEITURE ASSETS

The central issue before the court is one of first impression: whether a relator in a *qui tam* action is entitled to a relator's share where the United States has declined to intervene in the *qui tam* action but has pursued criminal prosecution against the defendant and has recovered substantially all of the defendant's available assets through criminal forfeiture proceedings.  For the reasons set forth below, the court holds that the relator is entitled to claim its relator share under such circumstances.[2]

### A.    Criminal Forfeiture as the United States' Alternate Remedy

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, is an anti-fraud statute that imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government."  31 U.S.C. § 3729(a)(2).  Persons who violate the FCA are liable for civil penalties and treble damages, plus the costs incurred in bringing an FCA lawsuit.  *Id.* § 3729(a).  To enhance enforcement, the FCA permits private persons known as "relators" to bring *qui tam* actions on behalf of the government.  A *qui tam* suit

---

[2]  However, as discussed in Part II.C below, this ruling does not preclude the United States from moving the court to dismiss the case pursuant to 31 U.S.C. § 3730(e)(4).  If the United States contends that FDSI has not satisfied the requirements of § 3730(e)(4), either in regards to its claim against Home Pharm or Ms. Bisig, then the United States will be permitted to file an appropriate motion setting forth the legal arguments and evidentiary basis for the motion, in accordance with the briefing schedule set forth by the court in Part V below.

is filed in camera, and remains under seal for sixty days.  *Id.* § 3730(b)(2).  The *qui tam*
complaint will remain under seal for longer than sixty days when the government shows
good cause to do so.  *Id.* § 3730(b)(3).  The relator must present all material evidence
to the government.  The government then must choose to intervene and proceed with
the *qui tam* action, or to decline intervention.  *Id.* § 3730(b)(4).  If the suit is successful,
the relator receives a portion of the government's recovery.  *Id.* § 3730(d).  If the
government "proceeds with the action," the relator will receive between 15 and 25
percent of the government's recovery, "depending upon the extent to which the person
substantially contributed to the prosecution of the action," plus reasonable expenses.
*Id.* § 3730(d)(1).  If the relator proceeds on his own, he will receive between 25 and 30
percent of the proceeds, plus reasonable expenses.  *Id.*

In addition, the United States "may elect to pursue its claim through *any* alternate
remedy available to the [United States]."  *Id.* § 3730(c)(5) (emphasis added).  If the
United States pursues an alternate remedy, the relator "shall have the same rights in
such proceeding as such person would have had if the action had continued under this
section."  *Id.*  FDSI argues that the United States pursued its claim through an alternate
remedy; specifically, the alternate remedy was choosing to prosecute the Defendant
and making significant recoveries through criminal forfeiture.  The United States argues,
inter alia, that a criminal prosecution resulting in criminal forfeiture cannot be considered
an alternate remedy under § 3730(c)(5).  The court holds that when the United States
declines to intervene in the *qui tam* action, but seeks recovery of defendant's assets

through criminal forfeiture, the United States has engaged in an "alternate remedy" for the purposes of § 3730(c)(5).

In interpreting the meaning of § 3730(c)(5), the court begins with the statutory language. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *Cent. States, S.E. & S.W. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). The court applies conventional rules of statutory construction: according words and phrases their ordinary and natural meaning; avoiding rendering them meaningless, redundant, or superfluous; viewing words not in isolation but in context; favoring the more reasonable result; and avoiding a construction contrary to clear statutory intent. *See Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004) (citing *In re Merchants Grain, Inc. By & Through Mahern*, 93 F.3d 1347, 1353-54 (7th Cir. 1996)); *see also Fulkerson*, 238 F.3d at 895; *Cent. States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000).

The language of § 3730(c)(5) specifies broadly that the United States may use "any" alternate remedy available to pursue its claim. 31 U.S.C. § 3730(c)(5). By using the word "any," the statute unambiguously places no restriction on the alternate remedies available to the United States. However, the court must still interpret the term "alternate remedy." FDSI argues that any act to seek recovery outside of the *qui tam* action constitutes an "alternate remedy" to the *qui tam* action. The United States argues for a more narrow interpretation of "alternate remedy," suggesting that a remedy is only alternate when it precludes the continuance of the *qui tam* action. Here, the United States asserts that criminal forfeiture is not an alternate remedy because the

-6-

forfeiture has not precluded FDSI from continuing to seek a recovery against the Defendant under the *qui tam* action.  The court finds validity in both parties' interpretations of the plain meaning of alternate remedy; thus, the plain meaning of "alternate remedy" is ambiguous.

When the plain meaning is not ascertainable, the court must interpret the meaning by viewing words not in isolation but in context, favoring the more reasonable result, and avoiding a construction contrary to clear statutory intent.  *See Cole*, 389 F.3d at 725 (citing *In re Merchants Grain*, 93 F.3d at 1353-54).  To do so, the court first recognizes the purpose of the FCA, as described by the Sixth Circuit Court of Appeals: "Congress made it clear that its 'overall intent in amending [§ 3730] [was] to encourage more private enforcement suits.' [S. Rep. 99-345, at 23-24, 1986 U.S.C.C.A.N. at 5288-89.]  It emphasized its belief that '[i]n the face of sophisticated and widespread fraud . . . only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds.' *Id.* at 2, 1986 U.S.C.C.A.N. at 5267."[3]  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 648 (6th Cir. 2003).

The United States' proposed interpretation of "alternate remedy" would enable the United States to stay the *qui tam* suit, prosecute the Defendant, and recover the Defendant's assets through criminal forfeiture without having to share that recovery with

---

[3]  The Senate Report also provided that "[t]he Department of Justice has estimated fraud as draining 1 to 10 percent of the entire Federal budget.  Taking into account the spending level in 1985 of nearly $1 trillion, fraud against the Government could be costing taxpayers anywhere from $10 to $100 billion annually."  S. Rep. No. 99-345, at 3 (1986) (footnote omitted), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5268.

the relator, who was first to uncover the fraudulent activities and report them to the United States.  The advantages that this interpretation would grant the United States is clear: it would not be forced to share its recovery with relators.  As a result, the United States would carry the incentive in most cases to stay the *qui tam* action and seek recovery through the criminal prosecution and forfeiture proceedings.  But this result would contradict the FCA's purpose.  First, when dealing with a defendant who violates the FCA, the United States will likely recover most, if not all, of the defendant's available assets through the criminal forfeiture proceedings.  This results in the defendant becoming judgment-proof.  And while the United States' interpretation would allow the relator to continue with the *qui tam* action against the defendant, there would be nothing left for the relator to recover from a judgment-proof defendant.  Consequently, this interpretation would have the effect of destroying Congress' unambiguous purpose that the government and private citizens collaborate in battling fraudulent claims, and it would impede Congress' legislative intent to encourage private citizens to file *qui tam* suits.

Therefore, the FCA ought to be interpreted in a manner that will maintain the incentive underlying the *qui tam* aspect of the FCA.  Thus, the court holds in this case that because the United States has achieved a monetary recovery from the Defendant in a manner outside of the *qui tam* action, and that recovery made an actual monetary recovery by the relator in the *qui tam* action either impossible or futile, the United States, in effect, elected to pursue its claim through an alternate remedy under        §
3730(c)(5).  This interpretation is especially appropriate in this particular situation in

which the United States caused the stay of the *qui tam* action in order to pursue criminal prosecution against the Defendant and recover substantially all the Defendant's assets through forfeiture proceedings.  Simply stated, the United States cannot sidestep the requirement to share recovery with the relator, who contends that it first discovered the fraud and informed the United States regarding the fraud, by merely electing to recover through criminal forfeiture proceedings.

The court finds support for its interpretation of "alternate remedy" in *Bledsoe* and *United States ex rel. Barajas v. Northrop Corp.*, 258 F.3d 1004 (9th Cir. 2001).  The relator in *Bledsoe* brought a *qui tam* action against the defendant alleging that the defendant was fraudulently billing Medicaid and Medicare for services rendered.  The United States elected not to intervene, but negotiated a settlement agreement with the defendant regarding the fraud charges.  The Sixth Circuit held that the settlement agreement constituted an "alternate remedy" under § 3730(c)(5).  It explained that "the plain language of §3730(c)(5) makes clear that a relator's participation rights are preserved when the government pursues the relator's claims through any means alternative to intervening in the *qui tam* action."  *Bledsoe*, 342 F.3d at 648.  Then, after discussing the importance of *qui tam* actions as part of the FCA in order to fight widespread fraud against the government, it continued to hold that "if the government has recovered funds lost from conduct asserted in Relator's *qui tam* action, then the government has essentially settled Relator's claims, regardless of whether it formally intervened in Relator's action or not."  *Id.* at 649.

The relator in *Barajas* brought a *qui tam* action against a defense contractor, alleging that the contractor falsified test results for flight data transmitters that it sold to the Air Force.  The government chose not to intervene in the *qui tam* action, but began administrative proceedings in which it threatened to suspend or disbar the contractor from entering into contracts with the Department of Defense.  The government and the contractor reached an agreement in which the contractor would provide the Air Force with properly working data transmitters and with cash payments.  The Ninth Circuit found that the settlement agreement arising from the debarment proceedings constituted an "alternate remedy" within the meaning of § 3730(c)(5).  *Barajas*, 258 F.3d at 1010-13.  The Ninth Circuit reasoned that "[t]he FCA is designed to help fight fraud against the government by encouraging private individuals to come forward with information about fraud that might otherwise remain hidden.  The encouragement is provided by giving these individuals a relator's share of any recovery obtained using the relator's information in an FCA action, or an equivalent share of a recovery obtained using that same information to procure an 'alternative remedy.'"  *Id.* at 1012.  Both *Bledsoe* and *Barajas* focus on rewarding the source of the government's information, not on what procedure the government used in recovering the proceeds of the fraud.  Accordingly, whether the United States recovered proceeds of the fraud through the *qui tam* action or through criminal forfeiture, the result should be the same: the relator must be rewarded for its part in uncovering the fraud.

Contrary to what the United States suggests, the court's ruling does not run against the purpose of criminal forfeiture laws.  The purpose of forfeiture is to "punish a

defendant for his ill-gotten gains by transferring those gains from the defendant to the United States Department of Justice." *United States v. Emerson*, 128 F.3d 557, 567 (7th Cir. 1997). It "remove[s] from an offender the fruits and instrumentalities of his crime, and thereby provides a powerful disincentive to commit the crime in the first instance." *United States v. O'Connor*, 321 F. Supp. 2d 722, 729 (E.D. Va. 2004). The court's interpretation of the FCA not only preserves the purpose of *qui tam* actions, it likewise preserves the punitive purpose of forfeiture because the fruits and instrumentalities of the crime are still removed from the defendant.

The United States also argues that the court's interpretation "conflicts sharply with the provisions of the Mandatory Victims Restitution Act of 1996 ("MVRA") that require a court to order that a defendant make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1)." (U.S.'s Opp'n Mot. Intervene 12.) The court disagrees. While the MVRA requires that restitution be ordered in this action, which the court has done, the MVRA does not require the United States to use forfeiture proceeds to satisfy the restitution order. If it so chooses, the U.S. Attorney General may apply the forfeiture proceeds as partial satisfaction of the restitution order, but it is not required to do so. 21 U.S.C. § 853(i)(1). However, before it can apply forfeiture proceeds to the restitution order, the United States must turn over the relator's share of the recovery. And while the United States argues that it is unfair to the victims to allow the relator to share in the recovery (thus taking away from the total amount available to the victims as restitution), the court again disagrees. By permitting *qui tam* actions, Congress recognized that it is fair to allow the relator to recover alongside the victims. Of course, if the relator would

-11-

not have uncovered the fraud in the first place, then the fraud possibly would have continued and the victims would have lost even more money.  Thus, as Congress recognized by allowing *qui tam* actions, it is only fair to allow the relator to be rewarded for its role in stopping the fraud.

The United States also argues that a criminal forfeiture proceeding cannot be an "alternate remedy" under § 3730(c)(5) because such an interpretation would grant the relator rights to participate in the criminal prosecution of the defendant.  Section 3730(c)(5) grants the relator with "the same rights in [the alternate remedy] proceeding as such person would have had if the [*qui tam*] action had continued."  Those rights include the right to "continue as a party" in the *qui tam* action, including the right to participate in the litigation, call witnesses, and cross-examine witnesses.  31 U.S.C. § 3730(c)(1).  The United States contends that the court's interpretation would then allow a relator to have the right to participate as a prosecuting party in a criminal case against the defendant, a result that is clearly not intended by Congress.  The court recognizes that this would be an undesirable result; however, the court's interpretation does not necessarily lead to this result.  First, § 3730(c)(5) only grants the relator with rights in the alternate proceeding.  Here, that alternate proceeding is not the entire criminal prosecution, but only the criminal forfeiture proceedings.  Thus, the relator's right to participate as a party in the alternate proceeding only extends to the forfeiture proceeding, not to the entire criminal prosecution.   Second, § 3730(c)(2)(D) grants the court with the discretion to limit the relator's rights in the alternate litigation.  Thus, when the United States opts to seek recovery through criminal forfeiture proceedings, the

court may substantially limit the relator's involvement in the criminal prosecution. Accordingly, the court's interpretation does not allow the relator to participate as a prosecuting party in the actual criminal prosecution of the defendant.

**B.     The Relator's Right to Participate in the Forfeiture Proceedings**

The United States also contends that the relator lacks standing to participate in the ancillary forfeiture proceedings and that the relator's petition for third-party interest in the forfeiture proceeds should be denied because the relator has not shown an interest in the proceeds as required pursuant to 21 U.S.C. § 853(n)(6). Section 853(n)(6) allows a court to recognize a petitioner's interest in the forfeiture proceeds only if: 1) the petitioner demonstrates an interest in the forfeiture property that was superior to the defendant's interest at the time of the commission of the crime; or 2) the petitioner demonstrates that he was a bona fide purchaser for value of the property. 21 U.S.C. § 853(n)(6). The court does not dispute the United States' assertion that FDSI has not shown an interest under § 853(n)(6). However, the court agrees with FDSI that the United States misconstrues the nature of FDSI's standing and legal interest in the forfeited property. FDSI's interest is not as a third-party claimant under § 853(n), but rather as a relator, or on behalf of the United States itself. As explained above, the FCA provides that a relator is entitled to a share of the proceeds recovered by the United States against the defendant. Thus, the relator's interest is not a direct interest in the defendant's property itself, but rather it is an interest in the United States' interest in that property. Standing and the right to participate in the forfeiture proceedings are thus granted to the relator by 31 U.S.C. § 3730(c)(5), which ensures that the relator

-13-

maintains the "same rights" in the alternate proceeding as it would have had in the *qui tam* proceeding.  These "rights" include the right to participate in the forfeiture proceeding pursuant to § 3730(c), and the right to recover a percentage of the United States' recovery pursuant to § 3730(d)(1).

**C.      FDSI's Failure to Name Ms. Bisig as a Defendant in the *Qui Tam* Action Does Not Preclude FDSI's Share of the Recovery**

FDSI's *qui tam* complaint was brought against Home Pharm, and not Ms. Bisig, who owned and operated Home Pharm.  The United States contends that FDSI's failure to name Ms. Bisig as a defendant on the *qui tam* complaint precludes recovery for FDSI because the United States' forfeiture proceedings involve Ms. Bisig and not Home Pharm.  To the extent that the United States is asserting that FDSI cannot amend its complaint, the court disagrees.  Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once as a matter of course at any time within twenty days after the complaint is served.  Because the United States continually asked the court for an extension of time to elect to intervene, the complaint was not served on the named Defendant Home Pharm until July 9, 2004.  Twelve days later, on July 21, 2004, FDSI filed an amended complaint naming Ms. Bisig as an additional party to the *qui tam* action.  Indeed, these types of omissions are generally cured by an amended complaint.

However, to the extent that the United States is arguing that FDSI was not the original source of the information leading to the United States' recovery, and thus

-14-

seeking to dismiss the *qui tam* claim against Home Pharm or Ms. Bisig pursuant to 31 U.S.C. § 3730(e)(4), the court withholds a ruling for now and will permit the United States to file an appropriate motion setting forth the legal arguments and evidentiary basis for the motion, in accordance with the briefing schedule set forth by the court in Part V below.[4]

## III.    FDSI'S CLAIM FOR FEES AND COSTS

In addition to claiming its relator share of the proceeds, FDSI asks the court for its costs and attorneys' fees.  31 U.S.C. § 3730(d)(1) grants the relator the right to "reasonable attorneys' fees and costs."  However, unlike the relator's share, which is to be made from the proceeds of the government's action or settlement, the relator's right to fees and costs "shall be awarded against the defendant."  31 U.S.C. § 3730(d)(1). Thus, if successful, FDSI will be entitled to reasonable attorneys' fees and costs. However, those fees and costs are not to be taken from the proceeds recovered by the United States, but would be awarded against the defendants, Ms. Bisig and Home Pharm.

## IV.    STATE OF INDIANA'S INTEREST IN FORFEITURE PROCEEDS

The State of Indiana, represented by the same counsel representing FDSI, claims entitlement to approximately forty percent of the proceeds collected by the United States.  The Indiana Medicaid Program was a victim to Home Pharm's and Ms.

---

[4]  By recognizing the amendment of the complaint by FDSI, the court does not determine whether the amendment relates back to the date of the filing of the original complaint.

Bisig's fraudulent conduct.  As such, the court ordered that Ms. Bisig pay restitution to the Indiana Medicaid Program in the amount of $1,789,927.83.  According to the State of Indiana, it funds approximately forty percent of the Indiana Medicaid Program's costs, with the remainder being funded by the United States.  It therefore asks the court to order the United States to disperse forty percent of the proceeds to the State of Indiana.

A district court may order both restitution and forfeiture, as the court has done in this case.  *United States v. Emerson*, 128 F.3d 557, 566 (7th Cir. 1997).  When the district court orders criminal forfeiture, "the relation-back doctrine provides that the right, title, and interest in the forfeited property vests in the United States at the time the defendant committed the offense that gives rise to the forfeiture.  *See* 18 U.S.C. § 982 (incorporating by reference the relation-back doctrine of 21 U.S.C. § 853(c))."  *Emerson*, 128 F.3d at 567.  Through this relation-back procedure, the United States is granted priority legal interest in the forfeited property which is superior to the criminal defendant's interest in that property.

Following the entry of an order of forfeiture, a third party may petition the issuing court for a hearing to amend the order to exclude certain property in which the third party claims a legal right, title, or interest.  21 U.S.C. § 853(n).  In order to have standing under § 853, the third party petitioner must assert a "legal interest" in the property that either (1) vested prior to the time of the commission of the acts which gave rise to the forfeiture of the property, or (2) vested through the third party's bona fide purchase for value of the property.  21 U.S.C. § 853(c), (n).  *See also United States v. Watkins*, 320 F.3d 1279, 1283-84 (11th Cir. 2003); *United States v. Ribadeneira*, 105 F.3d 833, 835

-16-

(2d Cir. 1997); *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191-92 (D.C. Cir. 1995); *United States v. Lavin*, 942 F.2d 177, 187 n.12 (3d Cir. 1991); *United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988).  *But see United States v. Reckmeyer*, 836 F.2d 200, 205-06 (4th Cir. 1987).  If the third party petitioner fails to make the required assertion of legal interest, then it lacks the standing necessary for the court to adjudicate the validity of its alleged interest in the property.

In this case, the State of Indiana failed to make the required assertion as to its legal interest in the forfeited property.  At no time did the State of Indiana specifically assert that it holds a legal interest in the forfeited property that vested prior to the time of the commission of the acts which gave rise to the forfeited property.  Likewise, the State of Indiana makes no specific assertion that it is a bona fide purchaser of the forfeited property.  In fact, the only claim made by the State of Indiana is that it has "an interest in the Home Pharm-Assist Defendants' assets and as such claim an interest relating to the proceeds from the property forfeited in the Related Actions."  (Notice Claim ¶ 11.)  This general claim to interest in the proceeds of the property is much like a general unsecured claim against Home Pharm.  This type of general claim is insufficient to meet the standing requirement under § 853(n).  *See Ribadeneira*, 105 F.3d at 835 (holding that the alleging of a general claim of interest in the forfeited property is insufficient for standing purposes under § 853(n)); *BCCI Holdings*, 46 F.3d at 1191-92 (holding that "a general creditor can never have an interest in specific forfeited property," and "[a]lthough a general creditor . . . may in some sense have a legal interest against the [defendant's] entire estate, that is simply not the same as an interest in specific forfeited

property"); *Lavin*, 942 F.2d at 187 n.12; *Campos*, 859 F.2d at 1238 (holding that unsecured creditors should not be allowed to assert claims under § 853(n)). *But see Reckmeyer*, 836 F.2d at 205-06. Because the State of Indiana failed to assert a specific legal interest in the property which would have vested prior to the commission of the criminal acts, the court lacks standing to adjudicate the validity of its alleged interest in the property.

This does not mean that the State of Indiana is without recourse in recovering a portion of the forfeited property. The statute directs third parties, who do not have an interest in specific property, to seek relief from the Attorney General, not the court adjudging the forfeiture. *Watkins*, 320 F.3d at 1283. The Attorney General has the authority to "restore forfeited property to victims." 21 U.S.C. § 853(i)(1). Indeed, in this case, the United States, "as is its policy, seeks to return the proceeds of the forfeited property to the victims of Bisig's crimes so that they might be compensated as fully as possible for the losses they incurred." (U.S.'s Opp'n Notice Claim 3.) Thus, the State's only recourse here is to petition the Attorney General to restore a portion of the forfeited property as restitution to the State of Indiana. *See United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir. 1992) ("Attorney General, and not the judiciary, shall make decisions about how to divide up [forfeited] funds in order to compensate victims.").

## V.    CONCLUSION & BRIEFING SCHEDULE

Because the United States sought recovery from the *qui tam* Defendant through an alternate remedy, FDSI is entitled to claim its relator share of the recovery.  FDSI's interest is not in the seized or forfeited property itself, but in the United States' interest in that property.  However, two issues still remain to be addressed by the court: 1) whether FDSI has satisfied 31 U.S.C. § 3730(e)(4)'s original source requirement for its claim against Home Pharm and/or Ms. Bisig (although this will only become an issue if raised through an appropriate motion by the United States); and 2) what specific percentage of the United States' recovery, between fifteen and twenty-five percent, that FDSI is entitled to receive as the relator in the *qui tam* action.  In order to facilitate rulings on these issues, the court sets forth the following briefing schedule:

FDSI shall have until **January 20, 2006**, to file a motion requesting a specific amount of recovery for its relator's share, including any necessary legal or evidentiary support for the proposed amount.  The United States shall have until **February 21, 2006**, to respond to FDSI's motion and, if it so chooses, to move the court to dismiss the *qui tam* claims against Home Pharm and/or Ms. Bisig pursuant to § 3730(e)(4).  FDSI shall have until **March 23, 2006** to respond.  Finally, the United States shall have until **April 7, 2006**, to file its reply brief to its motion filed pursuant to § 3730(e)(4), if such a motion is filed.  The court will stay the disbursement of the defendants' assets pending a final determination regarding the proper amount to be distributed to FDSI, if any.

Accordingly, FDSI's motions to intervene and stay the disbursement of the Defendants' assets (IP 02-CR-112-T/F, Docket No. 76; 1:01-cv-030-JDT-WTL, Docket No. 65; 1:00-cv-335-JDT-WTL, Docket No. 46) are **GRANTED**.  Likewise, the court **GRANTS** FDSI's notices of claim and petitions for adjudication of interest (IP 02-CR-112-T/F, Docket No. 89; 1:01-cv-030-JDT-WTL, Docket No. 55) as far as the claim of interest extends to its statutory relator's share.  As stated above, this does not preclude the United States from raising a § 3730(e)(4) challenge to FDSI's claims.  The court **DENIES** FDSI's notices of claim and petitions for adjudication of interest (IP 02-CR-112-T/F, Docket No. 89; 1:01-cv-030-JDT-WTL, Docket No. 55) as far as they ask the court to recognize attorney fees and costs as part of its claim against the seized and forfeited property.

The court **DENIES** the State of Indiana's motions to intervene and stay (IP 02-CR-112-T/F, Docket No. 76; 1:01-cv-030-JDT-WTL, Docket No. 65; 1:00-cv-335-JDT-WTL, Docket No. 46) and its notices of claim and petitions for adjudication of interest (IP 02-CR-112-T/F, Docket No. 89; 1:01-cv-030-JDT-WTL, Docket No. 55).

ALL OF WHICH IS ENTERED this 21st day of December 2005.

_____
   John Daniel Tinder, Judge
   United States District Court

-20-

Copies to:

Christopher J. Braun
Plews Shadley Racher & Braun
cbraun@psrb.com

Lindley J. Brenza
Bartlit Beck Herman Palenchar & Scot
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610

Thomas A Brodnik
Stark Doninger & Smith
Suite 700
50 South Meridian
Indianapolis, IN 46204

Jonathan P. Emenhiser
Plews Shadley Racher & Braun
jemenhiser@psrb.com

Phyllis J. Garrison
McMains Morse
garrison@mcmainsmorse.com

Sharon Jackson
United States Attorney's Office
10 West Market Street Suite 2100
Indianapolis, IN 46204-3048

John M. Ketcham
Plews Shadley Racher & Braun
jketcham@psrb.com

Erin Reilly Lewis
United States Attorney's Office
erin.lewis@usdoj.gov

Michael B. McMains
McMains Morse
mcmains@mcmainsmorse.com

Timothy J. O'Hara
Bose McKinney & Evans
tohara@boselaw.com

Andre M. Pauka
Bartlit Beck Herman Palenchar Scott
andre.pauka@bartlit-beck.com

George M. Plews
Plews Shadley Racher & Braun
gplews@psrb.com

Michael Andrew Richardson
richardson.michael@eudoramail.com

Jill E. Zengler
United States Attorney's Office
jill.zengler@usdoj.gov

Hon. William T. Lawrence